**Paula Corbin JONES, Plaintiff,**

v.

**William Jefferson CLINTON and Danny Ferguson, Defendants.**

**No. LR–C–94–290.**

United States District Court, E.D.Arkansas, Western Division.

March 9, 1998.

Robert E. Rader, Jr., Thomas Wesley Holmes, James McCord Wilson, James Austin Fisher, David M. Pyke, Donovan Campbell, Jr., Rader, Campbell, Fisher & Pyke, Dallas, TX, for Paula Corbin Jones.

Robert J. Bittman, Office of Independent Counsel, Little Rock, AR, for U.S. of America, Office of Independent Counsel.

Kathlyn Graves, Wright, Lindsey & Jennings, Stephen C. Engstrom, Wilson, Engstrom, Corum & Coulter, Little Rock, AR, Robert S. Bennett, Skadden, Arps, Slate, Meaghen & Flom, Washington, DC, for William Jefferson Clinton.

Bill W. Bristow, Seay & Bristow, Jonesboro, AR, for Danny Ferguson.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

On the afternoon of January 28, 1998, the United States, by the Office of Independent Counsel ("OIC"), filed with this Court a motion for limited intervention and stay of discovery in the civil case of *Jones v. Clinton,* No. LR–C–94–290 (E.D.Ark.). In its motion, OIC argued that counsel for the plaintiff were deliberately shadowing the grand jury's investigation of the matter involving Monica Lewinsky and that "the pending criminal investigation is of such gravity and paramount importance that this Court would do a disservice to the Nation if it were to permit the unfettered—and extraordinarily aggressive—discovery efforts currently underway to proceed unabated." Motion of OIC, at 2–3. Given the pressing nature of OIC's motion and the fact that it was filed with less than 48 hours remaining in the period for conducting discovery, this Court convened a telephone conference the following morning and elicited the views of counsel for the plaintiff, counsel for the defendants, and OIC on the propriety of OIC's motion. Following the telephone conference (during which the Court orally announced its ruling), the Court that same day issued a brief written Order granting in part and denying in part OIC's motion. In essence, the Court concluded that the parties could continue with discovery in the short time that remained of those matters not in-

volving Ms. Lewinsky, but that any discovery that did involve Ms. Lewinsky would not be allowed to go forward and, further, that any evidence concerning Ms. Lewinsky would be excluded from the trial of this matter. The matter is now before the Court on motion of plaintiff for reconsideration or, in the alternative, for 28 U.S.C. § 1292(b) certification of the Order excluding evidence concerning Monica Lewinsky. The President has responded in opposition to plaintiff's motion, and plaintiff has filed a reply to the President's response. For the reasons that follow, the Court finds that plaintiff's motion should be and hereby is denied.[1]

## I.

■ In its Order, the Court identified three separate grounds for disallowing discovery as to Ms. Lewinsky and excluding evidence concerning her from trial. First, the Court noted that the timing of OIC's motion and the possible impact that the motion could have on the proceedings in this matter required that this Court rule prior to trial on the admissibility of evidence concerning Ms. Lewinsky. In that regard, the Court concluded that the balancing test under Rule 403 of the Federal Rules of Evidence compelled the conclusion that evidence concerning Ms. Lewinsky should be excluded from trial.[2] In so ruling, the Court acknowledged that such evidence might be relevant to the issues in this case and that the Court would otherwise await resolution of the criminal investigation currently underway if the Lewinsky evidence were essential to plaintiff's case. The Court determined, however, that evidence concerning Ms. Lewinsky was not essential to the core issues in this case and, in fact, that some of this evidence might even be inadmissable as extrinsic evidence under Rule 608(b) of the Federal Rules of Evi-

dence.[3] The Court noted that admitting *any* evidence of the Lewinsky matter would frustrate the timely resolution of this case and would undoubtedly cause undue expense and delay.[4]

Second, the Court ruled that it was perhaps more important that the substantial interests of the Presidency militated against any undue delay that would be occasioned by allowing plaintiff to pursue the Lewinsky matter. The Court noted that under the Supreme Court's ruling in *Clinton v. Jones,* — U.S. ——, ——, 117 S.Ct. 1636, 1651, 137 L.Ed.2d 945 (1997), "[t]he high respect that is owed to the Office of the Chief Executive ... is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery," and that a speedy resolution of this case was in everyone's best interest, including that of the Office of the President.

The final basis for the Court's ruling was the integrity of the criminal investigation. The Court noted that it must consider the fact that the government's proceedings could be impaired and prejudiced were the Court to permit inquiry into the Lewinsky matter by the parties in this civil case, *see, e.g., Arden Way Associates v. Ivan F. Boesky,* 660 F.Supp. 1494 (S.D.N.Y.1987), and that it would not be proper for this Court, given that it must generally yield to the interests of an ongoing grand jury investigation, to give the parties in this civil case access to discovery which would reveal the substance of witnesses' statements in the government's criminal investigation. *See* Fed.R.Crim.P. 16(a)(2) (generally prohibiting discovery from government witnesses). That being so, and because it was this Court's opinion that the case could in any event proceed without evidence concerning Ms. Lewinsky, the Court

---

1. The pleadings filed in reference to this matter include discussions of discovery matters and, therefore, will remain under seal in accordance with the Court's Confidentiality Order on Consent of all Parties.

2. Fed.R.Evid. 403 provides that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

3. In general, Fed.R.Evid. 608(b) provides that specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.

4. The Court noted, however, that its ruling did not preclude the admission of any other evidence of alleged improper conduct that may have occurred in the White House.

made the decision to disallow discovery as to Ms. Lewinsky and to exclude evidence concerning her from trial.

## II.

### A.

In her motion for reconsideration, plaintiff argues that she was given no notice that any issue of admissibility or discoverability of the Lewinsky evidence would be addressed during the hearing. She notes that the motion was filed not by either of the defendants, but by OIC, and that OIC sought only a temporary stay of discovery pending its investigation of felonies possibly committed by the President in connection with this civil action. Plaintiff states that OIC did not request exclusion of any evidence or that any party's discovery be permanently disallowed and, indeed, notes that prior rulings of this Court established that the Lewinsky evidence was discoverable in this civil action. She argues that this Court's Order was issued without the benefit of any consideration of the content (and hence the probative value) of the evidence being excluded, and that without knowing the substance of the evidence, this Court had no information to place on one side of the scale. Plaintiff argues that ruling the unknown evidence inadmissible under Rule 403 was clearly erroneous and an abuse of discretion, and she asks that this Court reconsider its decision and permit her to complete her discovery of the Lewinsky evidence.

### 1.

■ Contrary to plaintiff's assertion, this Court did in fact consider the possible nature of the Lewinsky evidence and what it might mean for plaintiff's case in conducting the Rule 403 balancing test. Specifically, this Court assumed that plaintiff was pursuing the Lewinsky matter in order to prove an alleged pattern and practice on the part of the President. The Court further assumed, strictly for the sake of argument, that any such evidence would show that the President engaged in the same type of behavior with Ms. Lewinsky that he is alleged to have engaged in with plaintiff—that he conditioned job benefits on sexual favors and attempted to conceal an alleged sexual relationship. The Court nevertheless concluded that

such hypothetical evidence was still nothing more than Rule 404(b) evidence, i.e., evidence of other alleged wrongful acts, and that it was not therefore essential to the core issues in this case of whether plaintiff *herself* was the victim of *quid pro quo* sexual harassment, hostile work environment harassment, or intentional infliction of emotional distress. Plaintiff's assumption that this Court's Order was issued without any consideration of the content and the probative value of the evidence being excluded is simply mistaken.

Although it may be true that plaintiff was not given notice that the issue of admissibility or discoverability would be addressed during the telephone conference, neither was this Court given notice prior to the filing of OIC's motion less than 24 hours earlier that OIC would seek intervention in this case and a stay of discovery. This Court simply did not anticipate OIC's involvement in this civil case and was thereby placed in a position of having to make an expedited decision prior to trial that considered the interests of the Presidency, the ongoing criminal investigation being conducted by OIC, and the plaintiff. The Court's solution to this problem was to attempt to separate the criminal investigation from this civil case by excluding what it viewed to be nonessential Lewinsky evidence from trial. The Court was not "punishing" plaintiff as she contends by excluding the Lewinsky evidence any more than it was "punishing" the President by allowing the discovery of such evidence in the first place.

The Court will not speculate on how it might rule if the primary defendant in this case were not a sitting President of the United States. The fact remains that in exercising its discretion in this case, this Court must consider the Supreme Court's instructions that Presidential responsibilities are to be given the "utmost deference," and that "[t]he high respect that is owed to the Office of the Chief Executive ... is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *See Clinton v. Jones,* —— U.S. ——, —— – ——, 117 S.Ct. 1636, 1651–52, 137 L.Ed.2d 945 (1997). Given a choice between the very real possibility of delaying

the trial of this nearly four-year old case by awaiting the completion of the criminal investigation so that the Lewinsky evidence could be explored by plaintiff or simply excluding from trial such nonessential evidence (even assuming it panned out in the way envisioned by plaintiff), this Court, utilizing the Rule 403 balancing test, opted for the latter.[5] There can be no doubt that the interests of the Presidency in resolving this civil case constitute good cause for utilizing the Rule 403 balancing test prior to trial and disallowing discovery into the Lewinsky matter, even though it is possible that such discovery could lead to admissible evidence.

■ The plaintiff argues that "[i]f any aspect of the President's alleged sexual conduct with respect to Ms. Lewinsky was not consensual, then it is *absolutely admissible* under Fed.R.Evid. 415." Motion of Plaintiff, at 5 (emphasis in original). She argues, without citation of authority, that "[e]vidence admissible under Rule 415 may not be excluded under Rule 403," *id.*, and that it was thus error for this Court to engage in a Rule 403 balancing test without knowing the precise nature of the Lewinsky evidence. Although the Court is not making any findings regarding the applicability of Rule 415 to the facts of this case, the Court does reject plaintiff's argument that the Rule 403 balancing test does not apply to Rule 415.

In *United States v. Sumner*, 119 F.3d 658, 662 (8th Cir.1997), the Court of Appeals for the Eighth Circuit held that the Rule 403 balancing test applies to evidence admitted pursuant to Rule 414 (a companion rule to Rules 413 and 415).[6] The court noted that the principal congressional sponsors' identical statements regarding proposed Federal Rules of Evidence 413–415, as well as their statements about the congressional presumption favoring admissibility, establish that the Rule 403 balancing test was intended to apply to the new rules:

> In other respects, the general standards of the rules of evidence will continue to apply, including the restrictions on hearsay evidence and the court's authority under Evidence Rule 403 to exclude evidence whose probative value is substantially outweighed by its prejudicial effect.
>
> \* \* \*
>
> The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission. The underlying legislative judgment is that the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.

*Sumner*, 119 F.3d at 662 (quoting 140 Cong. Rec. H8991–2 (daily ed. Aug. 21, 1994) (Statements of Rep. Molinari); 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (Statements of Sen. Dole)). In so ruling, the court noted that three district courts have concluded the Rule 403 balancing test applies to Rules 413 and 415. *Id.* at 662 n. 3 (citing *United States v. Guardia*, 955 F.Supp. 115, 117 (D.N.M.1997) (Rule 413); *Cleveland v. KFC Nat'l Management Co.*, 948 F.Supp. 62,

---

5. Plaintiff argues that even assuming the Court is legally required to stay discovery due to the pending criminal investigation, there is no evidence that the investigation would require a stay until the May 27, 1998 trial date. Motion of Plaintiff, at 12. She notes that OIC did not ask for a stay of that duration and that a stay of one or two months "might" be sufficient to allow the investigation to be completed, in which event there will still be enough time to complete discovery in this case without delaying the trial. *Id.* While plaintiff's optimism regarding when OIC's investigation will be completed may turn out to be justified, the "Whitewater" investigation of which the Lewinsky matter is now a part is in its fifth year, and there is no indication at this time that the Lewinsky aspect of the investigation will

be completed sufficiently in advance of the May 27 trial date so as to allow additional discovery. This Court has already denied the President's request that the trial be expedited, and given the deference that the Supreme Court has stated must be afforded the President, this Court is not willing to risk having to delay any trial simply on the plaintiff's assumption that OIC's investigation will soon be completed.

6. Federal Rules of Evidence 413, 414, and 415 were enacted as companion rules by Congress as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 320935, 108 Stat. 1796, 2135–37 (1994). *See Sumner*, 119 F.3d at 662.

66 (N.D.Ga.1996) (Rule 415); *Frank v. County of Hudson,* 924 F.Supp. 620, 624 (D.N.J. 1996) (Rule 415)).

The Eighth Circuit's decision in *Sumner,* then, establishes that the Rule 403 balancing test does in fact apply to Rule 415. For the reasons previously stated, application of that test to the facts of this case compels the conclusion that discovery of the Lewinsky evidence should be disallowed and evidence concerning her excluded from trial.

### 2.

The Court does not take the denial of plaintiff's motion for reconsideration lightly. The Court readily acknowledges that evidence of the Lewinsky matter might have been relevant to plaintiff's case [7] and, as she argues, that such evidence might possibly have helped her establish, among other things, intent, absence of mistake, motive, and habit on the part of the President. *See* Fed.R.Evid. 404(b), 406.[8] Nevertheless, whatever relevance such evidence may otherwise have (and again this Court has assumed for the sake of argument that it would be very favorable to plaintiff), it simply is not essential to the *core issues* in this case of whether plaintiff *herself* was the victim of *quid pro quo* sexual harassment, hostile work environment harassment, or intentional infliction of emotional distress. Plaintiff does not argue that her case depends solely on the Lewinsky evidence and, as the Court has previously noted, admitting *any* evidence of the Lewinsky matter would frustrate the timely resolution of this case and would undoubtedly cause undue expense and delay. Accordingly, the Court will adhere to its original decision disallowing discovery as to Ms. Lewinsky and excluding evidence concerning her from trial.[9]

### B.

In the alternative, plaintiff asks for 28 U.S.C. § 1292(b) certification of the Order disallowing discovery as to Ms. Lewinsky and

excluding evidence concerning her from trial. That section provides as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (emphasis in original).

██ Section 1292(b) establishes three criteria for certification of interlocutory appeal: the district court must be "of the opinion that" (1) the order "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion"; and (3) certification will "materially advance the ultimate termination of the litigation." *White v. Nix,* 43 F.3d 374, 377 (8th Cir.1994) (citation omitted). It has long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants. *Id.* at 376. Permission to allow interlocutory appeals should thus be granted sparingly and with discrimination, and should only be used in exceptional cases where a decision on appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases. *Id.* (citations omitted). Plaintiff's motion for certification fails to satisfy the criteria set forth in § 1292(b) and must therefore be denied.

---

7. That much was acknowledged in the Court's initial Order, although the Court did note that some of the Lewinsky evidence might be inadmissible as extrinsic evidence under Rule 608(b).

8. Nothing in this Memorandum and Order should be construed as indicating how the Court would rule on such matters were the Lewinsky

evidence being considered for admission at any trial.

9. The Court reiterates that plaintiff is not precluded from seeking the admission at trial of any other evidence of alleged improper conduct that may have occurred in the White House.

First, prohibiting discovery of the Lewinsky matter from going forward and excluding such evidence from trial does not present a controlling legal question. The issue presented by plaintiff is whether this Court's Order was "clearly erroneous and an abuse of discretion." As noted in *White*, however, a legal question of the type referred to in § 1292(b) contrasts with a "matter for the discretion of the trial court." 43 F.3d at 377 (citation omitted). Discovery and evidentiary rulings are committed to this Court's sound discretion, *see White*, 43 F.3d at 377 (discovery); *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 612 (8th Cir.1997) (evidence), and "an allegation of abuse does not create a legal issue." *White*, 43 F.3d at 377. Accordingly, the Court finds that plaintiff has failed to present a controlling legal question.

Second, plaintiff's motion does not present a substantial ground for difference of opinion. Plaintiff argues that there are substantial grounds for difference of opinion as to the legal validity of this Court's Order because (1) it was impossible for the Court to do the balancing required by Rule 403 as the evidence being excluded was not yet discovered and not before the Court; (2) the Lewinsky evidence is specifically admissible under Rule 415 and it was thus error as a matter of law to exclude the evidence under Rule 403; (3) not a "shred" of evidence suggested that admission or discovery of the Lewinsky evidence would delay the trial of this case; (4) excluding such "potent" evidence punishes plaintiff; and (5) there was no "good cause" to disallow discovery of the Lewinsky evidence. The Court has previously addressed each of these grounds in denying plaintiff's motion for reconsideration and will not repeat that discussion here. The Court will note, however, that while " 'a sufficient number of conflicting and contradictory opinions' would provide substantial ground for disagreement," *White*, 43 F.3d at 378 (citation omitted), plaintiff has cited no such authority that would question the legal validity of this Court's Order. Nor does substantial ground for difference of opinion exist merely because there is a dearth of cases. *Id.* Accordingly, the Court finds that plaintiff does not present a substantial ground for difference of opinion.

Lastly, certification of this matter does little to advance the ultimate termination of this litigation. Irrespective of the fact that this Court has disallowed discovery of the Lewinsky evidence and excluded such evidence from trial, plaintiff will still pursue her lawsuit in substantially the same manner, albeit with one less witness and without any other evidence that may have resulted from further discovery into the Lewinsky matter.[10] "When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *Id.* at 378–79. Indeed, for the reasons previously stated, allowing discovery of the Lewinsky matter to go forward may well *delay* its ultimate termination. Accordingly, the Court finds that plaintiff has failed to show that certification of this matter will advance the ultimate termination of this litigation.

In sum, plaintiff has failed to satisfy the criteria set forth in § 1292(b) for certification of interlocutory appeal, and the Court therefore denies her motion seeking same. This does not, however, preclude plaintiff from petitioning the Eighth Circuit for a writ of mandamus.[11]

### III.

For the foregoing reasons, the Court denies plaintiff's motion for reconsideration or, in the alternative, for 28 U.S.C. § 1292(b) certification of the Order excluding evidence concerning Monica Lewinsky.

---

**10.** As previously noted, plaintiff does not argue that her case is dependent solely on the Lewinsky evidence.

**11.** In *Jones v. Clinton*, 72 F.3d 1354, 1363 (8th Cir.1996), the Eighth Circuit stated that if either party believes this Court is failing to discharge its responsibility to protect the President's role as our government's chief executive officer, without impeding Mrs. Jones's right to have her claims heard without undue delay, "the proper course is to petition [the Eighth Circuit] for a writ of mandamus or prohibition."