In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2937

PHILIP G. GROVES,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-2485 — **Gary Feinerman**, *Judge.*

_____

ARGUED DECEMBER 3, 2018 — DECIDED OCTOBER 25, 2019

_____

Before SYKES, BARRETT, and ST. EVE, *Circuit Judges.*

BARRETT, *Circuit Judge.* When a district court certifies an order for review before final judgment, parties have only ten days to petition us to hear the interlocutory appeal. Decades ago, we provided a way to circumvent that deadline: district courts could reenter or recertify their orders, restarting the clock, whenever doing so would further the purpose of the interlocutory review statute. But more recent Supreme Court cases call that workaround into question. The Court has

emphasized—as recently as a few months ago—that federal courts have no authority to read equitable exceptions into fixed filing deadlines. In light of the Court's precedent, we conclude that we were wrong to hold that district courts can extend the ten-day window by simply reentering or recertifying their orders. We therefore dismiss this appeal for lack of jurisdiction.

## I.

Philip Groves is an accountant who allegedly organized, sold, and promoted abusive tax shelters related to distressed Chinese debts in 2005. Ten years later, the IRS assessed a tax penalty against him for this behavior. Groves sued the government, arguing (among other things) that the catch-all five-year statute of limitations for civil penalties, found in 28 U.S.C. § 2462, applied to the assessment against him—and thus that the IRS acted too late.

The district court concluded that § 2462 didn't apply, so in May 2017 it granted the government's motion to strike Groves's statute-of-limitations defense; in July, it denied Groves's motion for judgment on the pleadings for the same reasons. But because it believed that the orders satisfied the standard for immediate appeal provided in 28 U.S.C. § 1292(b), the court certified the orders for interlocutory review on August 8th.

Groves had the district court's permission to appeal, but § 1292(b) also required him to seek permission from this court within ten days of the district court's certification. He attempted to obtain our permission on August 18th, the tenth day after the district court's certification order, by emailing an application to appeal to the Seventh Circuit Clerk's Office. But

a paralegal mistyped the email address, so the email was not delivered. An automated message noting the failure, sent to the paralegal within minutes, landed in a spam folder. The paralegal discovered that notification on Sunday, August 20th, and emailed the application to the correct address that day. On August 21st, Groves informed the district court of the mix-up and asked it to recertify its orders to restart the ten-day clock. The court complied, entering an otherwise identical second order certifying its May and July orders for interlocutory appeal. Groves refiled his application the next day, and we provisionally granted it.

Both parties argue that we have jurisdiction to hear this appeal even though Groves missed the initial deadline. The government, consistent with the position we took in *Nuclear Engineering Co. v. Scott*, maintains that § 1292(b)'s deadline is jurisdictional but that the statute allows a district court to recertify an order in order to reset the clock. *See* 660 F.2d 241 (7th Cir. 1981). Groves likewise urges us to adhere to *Nuclear Engineering*, but he also advances an alternative argument: he maintains that § 1292(b)'s ten-day deadline is *not* jurisdictional, but rather a claim-processing rule that the government has waived here.

## II.

The general rule is that "appellate review must await final judgment." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 716 (2019). But when a district court determines that one of its orders "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," it can say so in the order, enabling the disappointed litigant to ask the court of

appeals to review the order immediately. 28 U.S.C. § 1292(b). The court of appeals has discretion to permit the appeal "if application is made to it within ten days after the entry of the order." *Id.* A district court can include the certification in the original order or add it afterward by amendment; in the latter circumstance, "the time to petition runs from entry of the amended order." FED. R. APP. P. 5(a)(3). In other words, the clock does not start until the litigant is actually authorized to file a petition.

Despite Groves's argument to the contrary, the ten-day deadline is not a claim-processing rule. The Supreme Court has drawn a bright line: "If a time prescription governing the transfer of adjudicatory authority from one Article III court to another appears in a statute, the limitation is jurisdictional; otherwise the time specification fits within the claim-processing category." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 20 (2017) (citations omitted). Section 1292(b) is jurisdictional because it "govern[s] the transfer of adjudicatory authority" from the district court, which issued the order, to the court of appeals, which reviews it. *Id.* Under a straightforward application of *Hamer*, § 1292(b)'s time bar is jurisdictional.

Groves resists this conclusion by arguing that no statutory deadline is jurisdictional unless Congress clearly says so. And he maintains that "Congress did [nothing] 'special' to suffuse the ten-day deadline to petition for permission to file an interlocutory appeal with jurisdictional significance." Groves Supp. Br. at 12. But Groves's premise—that the jurisdictional status of a deadline always depends on a clear-statement rule—is mistaken. The clear-statement rule applies only when a time limit appears in a statute that does *not* govern an

Article III court's adjudicatory authority. *See id.* at n.9 ("In cases *not involving the timebound transfer of adjudicatory authority from one Article III court to another*, we have additionally applied a clear-statement rule …." (emphasis added)).[1] In that circumstance, the clear-statement rule helps the court determine whether Congress has exercised its power "to attach the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule." *Henderson*, 562 U.S. at 435; *see also Hamer*, 138 S. Ct. at 20 n.9. But when a time limit appears in a statute that addresses an Article III court's adjudicatory authority, as § 1292(b) does, the default runs the other way—the limit is presumptively jurisdictional. That presumption is consistent with the "longstanding treatment of statutory time limits for taking an appeal as jurisdictional"—a principle that the Court emphasized in *Bowles v. Russell*, 551 U.S. 205, 210 (2007). *See also Hamer*, 138 S. Ct. at 20.

Groves has a backup argument. Even if the clear-statement rule is narrower in scope, he says, it applies here because § 1292(b) does not really "govern[] the transfer of adjudicatory authority" from the district court to the court of appeals. *See Hamer*, 138 S. Ct. at 20. A petition for permissive appeal does not stay the proceedings in the district court, and the district court retains jurisdiction over the case even if the petition

---

[1] Consistent with this principle, the cases on which Groves relies apply the clear-statement rule to statutes that do not address the adjudicatory authority of an Article III court. *See, e.g.*, *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015) (the FTCA's statute of limitations); *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013) (a deadline for healthcare providers to file an administrative appeal for Medicare reimbursement); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011) (a time limit for a veteran to appeal the administrative denial of benefits). These cases therefore do not help Groves.

is granted. *See* § 1292(b); *United States v. City of Chicago*, 534 F.2d 708, 711 (7th Cir. 1976) ("An appeal from an interlocutory order does not divest the trial court of jurisdiction."). Thus, Groves says, the statute does not actually "transfer" jurisdiction to the court of appeals. And without such a transfer, he contends, the statute's deadline falls in the "claim processing" category unless Congress expressly says otherwise.

This argument is meritless. For one thing, § 1292(b) does govern the transfer of adjudicatory authority to the courts of appeals; it empowers the court of appeals to review a district-court order, and once that order is on appeal, the district court can no longer modify it. *See Aljabri v. Holder*, 745 F.3d 816, 820 (7th Cir. 2014) ("The retained jurisdiction [under § 1292(b)] allows the district court to proceed with other aspects of the case; it does not mean that the district court can continue to modify the same order that is up on interlocutory appeal."). But in any event, Groves puts far too much weight on *Hamer*'s use of the word "transfer." *Hamer* does not suggest that the jurisdictional status of a deadline (or other limitation) turns on the details of a transfer—for example, whether the transferred authority encompasses the whole case or a single order. *Hamer*, synthesizing a line of precedent, makes clear that the relevant inquiry is whether the time limit appears in a *jurisdictional* statute—one that "speak[s] to the power of the court rather than to the rights or obligations of the parties." *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (2010) (citations omitted). If the limit appears in a statute that speaks to the power of the court, it is a limitation on the power of the court. *See In re Sobczak-Slomczewski*, 826 F.3d 429, 432 (7th Cir. 2016) (explaining that a timeliness condition located in a jurisdiction-granting statute is jurisdictional); *see also Hamer*, 138 S. Ct. at 20; *Bowles*, 551 U.S. at 210. If it appears in a statute that

speaks to the rights or obligations of parties, it is a claim-processing rule unless Congress says otherwise. *See Kwai Fun Wong*, 135 S. Ct. at 1633 ("This Court has often explained that Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional."); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006) (concluding that a statutory threshold that "appears in a separate provision and does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts" was not jurisdictional in nature (citation omitted)).

There can be no doubt that § 1292(b) "speak[s] to the power of the court rather than to the rights or obligations of the parties." *See Reed Elsevier*, 559 U.S. at 160; *see also Tidewater Oil Co. v. United States*, 409 U.S. 151, 168 (1972) ("[Section] 1292(b) was intended to establish jurisdiction in the courts of appeals to review interlocutory orders …."); *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) ("As the text of § 1292(b) indicates, appellate jurisdiction applies to the order certified to the court of appeals …. But the appellate court may address any issue fairly included within the certified order …." (emphasis removed)). That means that § 1292(b)'s deadline is jurisdictional. *See Hamer*, 138 S. Ct. at 20. And indeed, neither we nor any other circuit has questioned the jurisdictional status of the ten-day limit. *See Nuclear Engineering*, 660 F.2d at 245 ("Appeals brought pursuant to § 1292(b) must be filed within 10 days of the entry of the certification order, and that requirement is jurisdictional."); *see also*, *e.g.*, *In re City of Memphis*, 293 F.3d 345, 348 (6th Cir. 2002) ("Failure to file an appeal within the 10-day period is a jurisdictional defect that deprives this court of the power to entertain an appeal."); *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 866 (4th Cir. 2001) ("The ten-day filing requirement is jurisdictional

and therefore may not be waived."). The question with which we and other circuits have struggled is whether this jurisdictional deadline can be extended. We now turn to that issue.

III.

The statute does not authorize either district courts or the courts of appeals to extend § 1292(b)'s deadline for any reason. Yet we have permitted district courts to do indirectly what they cannot do directly: give litigants more time to file a petition in the court of appeals. In *Nuclear Engineering Co.*, we held that if there are equitable reasons to permit an appeal even after the statutory deadline has passed, a district court may restart the ten-day clock by either vacating and reentering or simply by recertifying its order. 660 F.2d at 246–47. We reasoned that a district court should not be driven by "rigid" adherence to the statutory deadline but should instead consider the value of an immediate appeal, along with the litigant's culpability for the delay and whether recertification would prejudice the opposing party. *Id.* at 247. Other circuits have approved this sort of indirect extension as well, although there is disagreement about the factors that a district court should apply in deciding whether to grant it. All of these cases were decided before *Bowles v. Russell*, 551 U.S. 205, 214 (2007), introduced the Court's renewed emphasis on the federal courts' lack of authority to read equitable exceptions into fixed statutory deadlines. *See In re City of Memphis*, 293 F.3d at 350;[2] *Safety-Kleen, Inc. (Pinewood)*, 274 F.3d at 866–67;

---

[2] The Sixth Circuit originally held that district courts could not restart the clock by recertification. *See Woods v. Balt. & Ohio R.R. Co.*, 441 F.2d 407, 408 (6th Cir. 1971). It reversed course in *In re City of Memphis*, ending the circuit split that had developed in the years following *Woods*.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1291 n.9 (11th Cir. 1998); *English v. Cody*, 146 F.3d 1257, 1259 n.1 (10th Cir. 1998); *Marisol A. ex rel. Forbes v. Giuliani*, 104 F.3d 524, 528–29 (2d Cir. 1996); *In re Benny*, 812 F.2d 1133, 1137 (9th Cir. 1987); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1112 (5th Cir. 1981); *Braden v. Univ. of Pittsburgh*, 552 F.2d 948, 954–55 (3d Cir. 1977) (en banc); *In re La Providencia Dev. Corp.*, 515 F.2d 94, 95 n.1 (1st Cir. 1975).[3]

We acknowledged in *Nuclear Engineering Co.* that this is a "rather thorny question" given the ostensibly clear language of the statute, 660 F.2d at 245, and while we have never revisited the case, we have never exercised § 1292(b) jurisdiction in reliance on it either.[4] *Nuclear Engineering Co.*, however, has

---

[3] As Justice Stevens has noted, "this view essentially renders the 10-day time limitation, if not a nullity, essentially within the discretion of a district court to extend at will." *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 162 (1984) (Stevens, J., dissenting). *Baldwin County* is a puzzling case. After describing the jurisdictional issue as a "close one" subject to a circuit split, the dissent concluded with little explanation that recertification is effective to extend the jurisdictional deadline. *Id.* The majority didn't address the question at all, so it is unclear whether it viewed the procedural posture differently or thought that interlocutory jurisdiction was proper. Even if the majority approved recertification sub silentio, however, its assumption would be a "drive-by jurisdictional ruling[]" lacking precedential effect. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). Moreover, as we explain in the text, more recent Supreme Court decisions have severely undermined the proposition that a federal court can extend a fixed jurisdictional deadline, whether directly or indirectly.

[4] We have only cited *Nuclear Engineering Co.* eight times in the interlocutory-appeal context, and none of those cases relies on its holding that a recertification can restart the clock for an appeal under § 1292(b). Seven of these cases cite it for a different proposition. *See In re Hamilton*, 122 F.3d 13, 14 (7th Cir. 1997); *Hillman v. Resolution Tr. Corp.*, 66 F.3d 141, 143–44

become more than a debatable one-off; intervening Supreme Court precedent has undermined it. Just a few months ago, the Court emphasized the rigidity of filing deadlines for interlocutory appeals *even when they appear in claim-processing rules. See Nutraceutical Corp.*, 139 S. Ct. at 714–15. *Nuclear Engineering Co.* permits a district court to make an end-run around a *jurisdictional* deadline—and jurisdictional deadlines are even more immoveable because they cannot be waived or forfeited. *See Nestorovic v. Metro. Water Reclamation Dist. of Greater Chi.*, 926 F.3d 427, 430 (7th Cir. 2019). Because *Nuclear Engineering Co.* is inconsistent with the Court's approach to fixed filing deadlines, we overrule it.[5]

In doing so, we begin with the basic principle that when a jurisdictional statute sets a firm deadline, courts have no authority to extend it. *Bowles*, 551 U.S. at 209 ("[T]he taking of an appeal within the [statutorily] prescribed time is 'mandatory and jurisdictional.'" (citation omitted)). This can lead to harsh results, especially when there are strong equitable reasons to give a litigant more time. In *Bowles*, for example, a criminal defendant—seeking      to      appeal      his      fifteen-year-to-life

---

(7th Cir. 1995); *Weir v. Propst*, 915 F.2d 283, 286 (7th Cir. 1990); *Edwardsville Nat'l Bank & Tr. Co. v. Marion Labs., Inc.*, 808 F.2d 648, 650 (7th Cir. 1987); *Tamari v. Bache & Co. (Leb.) S.A.L.*, 730 F.2d 1103, 1104 n.2 (7th Cir. 1984); *Hewitt v. Joyce Beverages of Wis., Inc.*, 721 F.2d 625, 626 (7th Cir. 1983); *In re Oil Spill by the "Amoco Cadiz" off the Coast of France Mar. 16, 1978*, 659 F.2d 789, 793 n.5 (7th Cir. 1981). The eighth, an unpublished decision, cites it approvingly for this proposition but does not exercise interlocutory jurisdiction in reliance on it. *See Coleman v. Davis*, 28 F. App'x 541, 542 (7th Cir. 2002).

[5] Because this opinion overrules our precedent and creates a circuit split, it has been circulated among all judges of this court in regular active service. *See* 7TH CIR. R. 40(e). No judge voted to rehear the case en banc.

sentence—filed his notice of appeal three days after the statutory deadline because the district court told him the wrong due date. 551 U.S. at 207. Still, the Court concluded that it had "no authority to create equitable exceptions to jurisdictional requirements." *Id.* at 214. And in *In re Sobczak-Slomczewski*, we held that a district court lacked jurisdiction over a bankruptcy appeal filed one day after the fourteen-day deadline, even though the appellant didn't receive the order in the mail until the fourteenth day. 826 F.3d at 432. Deadlines are by nature arbitrary, which can make dismissal for failure to comply with them seem particularly harsh. But the Court has been unwavering in its insistence that our adjudicatory authority is limited by the Constitution and Congress, and *no* result justifies our intervening where we have not been granted the power to do so. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.").

Indeed, the Court has emphasized that even non-jurisdictional time limits may require bright-line application. *See Nutraceutical Corp.*, 139 S. Ct. at 714 (explaining that "some claim-processing rules are 'mandatory'—that is, they are 'unalterable' if properly raised by an opposing party" (citation omitted)). In *Nutraceutical Corp.*, the Court concluded that the fourteen-day deadline to petition to appeal a class-certification decision—an interlocutory order—could not be extended by a court of appeals. *Id.* at 715. The Court based that conclusion on the "plain import" of the time limit, Federal Rule of Appellate Procedure 26(b)(1)'s prohibition on courts of appeals extending the deadline for petitions for permission to appeal, and the lack of any provision allowing for equitable

override of those rules. *Id.* Altogether, the relevant rules "express[ed] a clear intent to compel rigorous enforcement of [the fourteen-day] deadline, even where good cause for equitable tolling might otherwise exist." *Id.* And "[w]here the pertinent rule or rules invoked show a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving." *Id.* at 714.

Section 1292(b) indisputably bars the courts of appeals from granting litigants more time—even *Nuclear Engineering Co.* recognized that. *See* 660 F.2d at 246. The statute authorizes a court of appeals to grant a petition to appeal only "if application is made to it within ten days after entry of the order." 28 U.S.C. § 1292(b). And Rule 26(b)(1) reinforces that limit by expressly prohibiting courts of appeals from extending the time to petition for permission to appeal. *See also* FED. R. APP. P. 5(a)(2) ("The petition [for permission to appeal] *must be filed* within the time specified by the statute or rule authorizing the appeal." (emphasis added)). If a litigant asked us to toll the clock, there is no question that we would have to refuse.

It is similarly indisputable that § 1292 prohibits district courts from granting litigants extensions outright. An order purporting to allow a litigant fifteen days in which to file a § 1292(b) petition would be flatly inconsistent with the statute's ten-day limit. *Cf. Bowles*, 551 U.S. at 207–08 (holding that a district court lacks authority to grant a litigant a seventeen-day extension to file a notice of appeal when the statute set a fourteen-day limit). And while district courts can extend the time for filing a *notice of appeal* on grounds of excusable neglect, 28 U.S.C. § 2107(c), no statute gives them similar

authority to extend the time for filing a *petition for permission to appeal. Cf.* FED. R. APP. P. 26(b)(1) (treating notices of appeal and petitions for permission to appeal differently). That distinction makes sense: a litigant who loses the opportunity to appeal a final judgment forever loses the ability to appeal, but a litigant who loses the opportunity to file an interlocutory appeal has another chance later. Interlocutory appeals are exceptional, so their limitations are "purposefully unforgiving." *Nutraceutical Corp.*, 139 S. Ct. at 716.

*Nuclear Engineering Co.* permits a district court to make an end-run around this limit with the fiction that recertifying an order isn't the same thing as granting more time. But we have foreclosed that tactic in analogous contexts. The reentry of a collateral order does not restart the time to appeal. *See People Who Care v. Rockford Bd. of Educ. Dist. No. 205*, 921 F.2d 132, 135 (7th Cir. 1991). Nor does mere reentry of a judgment. *See FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211 (1952) ("[T]he mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought."); *Wilson v. United States*, 413 F.3d 685, 687 (7th Cir. 2005) (noting that district courts cannot simply restart the clock "by vacating and reentering a judgment"). And we have made clear that motions for post-judgment relief, FED. R. CIV. P. 60(b), may not be used to make "an end run around the deadline for filing an appeal" either. *See Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). Treating reentry of an order or judgment as a mechanism for restarting the clock renders a deadline subject to tolling, even when tolling is otherwise prohibited.

That's what *Nuclear Engineering Co.* does to § 1292(b). The statute sets a ten-day limit that district courts can't toll, yet

*Nuclear Engineering Co.* permits them to toll it anyway. This tactic is inconsistent with the statute's imposition of a fixed jurisdictional deadline, and its text underscores that. The statute provides that when a district court enters "*an* order not otherwise appealable" and concludes that it meets the statutory standards for interlocutory appeal, it "shall so state in writing in *such* order." 28 U.S.C. § 1292(b) (emphasis added). That statement may appear in the merits order when it issues or be added by amendment. FED. R. APP. P. 5(a)(3). But once it is certified, it becomes "*the* order" from which the clock runs, and accordingly "*the* order" from which a court of appeals may permit an appeal—so long as it receives the application within ten days of the order's entry. *See* 28 U.S.C. § 1292(b) (the court of appeals may "permit an appeal to be taken from *such order*, if application is made to it within ten days after entry of *the order*" (emphasis added)). If the application is not made within ten days, the order is no longer appealable. The statute does not contemplate that the order's appealability can be revived by a new certification; rather, the course has run for "such order" once the statutory period lapses.

Where, as here, a deadline for appeal is fixed, it "cannot be enlarged just because [a] court in its discretion thinks it should be enlarged." *See Minneapolis-Honeywell Regulator Co.*, 344 U.S. at 211. Accordingly, we overrule the portion of *Nuclear Engineering Co.* holding that mere recertification (or vacatur and reentry) of an order for interlocutory appeal may extend the jurisdictional deadline.[6] This will not work a sea

---

[6] Today's decision does not address whether or to what extent substantive reconsideration of a previously certified order might allow recertification to restart the clock. *Cf. Minneapolis-Honeywell Regulator Co.*, 344 U.S. at 211–12 ("Only when the lower court changes matters of substance,

change in our case law. Interlocutory appeals under § 1292(b) are rare, and, as we noted earlier, we have never relied on *Nuclear Engineering Co.* to exercise jurisdiction in this circumstance. *Cf. Bowles*, 551 U.S. at 214 (overruling the "unique circumstances" doctrine, which permitted a district court to excuse compliance with a jurisdictional requirement, when the Court had relied on it "only once in the last half century"). Nor are we disturbing the reliance interests of litigants, who have minimal reliance interests in procedural and jurisdictional rules. *See Hohn v. United States*, 524 U.S. 236, 251 (1998) ("The role of *stare decisis* [] is 'somewhat reduced in the case of a procedural rule which does not serve as a guide to lawful behavior.'" (citation and alterations omitted)). Most important, though, is that the Court's intervening precedent, not to mention our own, has rendered *Nuclear Engineering Co.* an aberration.

* * *

Because Groves failed to file his petition for permission to appeal within ten days of the district court's initial certification order, we lack jurisdiction to consider it and DISMISS his appeal.

---

or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken … begin to run anew." (footnotes omitted)); *see also Gary v. Sheahan*, 188 F.3d 891, 893 (7th Cir. 1999).